UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KARL DESHOTELS AND                    CIVIL ACTION NO. 6:12-cv-03133
OPELOUSAS-ST. LANDRY
REALTY COMPANY, INC.

VERSUS                                JUDGE DOHERTY

CONOCOPHILLIPS COMPANY                MAGISTRATE JUDGE HANNA
ET AL.


## MEMORANDUM RULING


Pending before the Court is the plaintiff's motion to remand (Rec. Doc. 20).
The motion is opposed.  Oral argument was heard on February 26, 2013.  For the
following reasons, the undersigned recommends that the motion be granted and this
action be remanded to the state court where it commenced.


### FACTUAL  BACKGROUND

The plaintiffs claim that certain property that they either own or use, which is
located in Evangeline Parish, was damaged by oil and gas exploration activities
conducted by the defendants.  More specifically, the plaintiffs allege that the
defendants "either caused this contamination, or are otherwise legally responsible for
this contamination.  Defendants' activities include the operation or construction of

various oil and gas facilities, including but not limited to, pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities." (Rec. Doc. 1-1 at 4.).  They further allege that the "defendants are liable for damage resulting from the operation of the wells in the Ville Platte Oil & Gas Field. . . as well as the operation of other equipment and facilities related thereto." (Rec. Doc. 1-1 at 4).  They then allege that the defendants "conducted, directed, controlled[,] or participated in various oil and gas exploration and production activities on the plaintiffs' Property as operators, and/or working interest owners, and/or mineral or surface lessees, and/or . . . oil field contractors or workover contractors" and that, among other allegations, the defendants improperly disposed of oilfield wastes on the property.  (Rec. Doc. 1-1 at 4-5).

The defendants named in the complaint are ConocoPhillips Company, Hilcorp Energy Company, Vintage Petroleum, LLC, Great Southern Oil & Gas Co., Inc., Louisiana Swabbing Service, Inc., Cajun Tubing Testers, Inc., G&L Well Service, Inc., Reliable Production Services, Inc., Superior Energy Services, L.L.C. (successor to Moore's Wireline), and Bennett L. Broussard.  (Rec. Doc. 1-1 at 3-4, 43).

The suit was originally filed in a Louisiana state court.  Hilcorp then removed the suit to this forum, arguing that this court has subject-matter jurisdiction under 28 U.S.C. § 1332 because (1) the amount in controversy exceeds the statutory minimum,

(2) the plaintiffs (who are alleged to be Louisiana citizens) are diverse in citizenship from defendants Conoco Phillips, Hilcorp, and Vintage, and (3) the remaining defendants (who are also alleged to be Louisiana citizens) were improperly joined. (Rec. Doc. 1 at 2).  Conoco Phillips and Vintage consented to the removal.  (Rec. Doc. 1-2).

In the removal notice, the removing defendants argued that defendant Broussard was improperly joined because he is deceased and, therefore, there is no possibility of recovery against him.  (Rec. Doc. 1 at 4).  They argued that Great Southern was improperly joined because it did not conduct oil and gas exploration activities with regard to any well at issue in this litigation.  (Rec. Doc. 1 at 5-6).  They argued that the remaining defendants – Louisiana Swabbing, Cajun Tubing Testers, G&L, Reliable, and Superior – were improperly joined because these defendants did not own interests in the relevant mineral leases, had no ownership or operating interest in the relevant wells or leases, and the petition lacks sufficient facts to hold them liable.  (Rec. Doc. 1 at 4-6).

The plaintiffs then filed the instant motion to remand.  (Rec. Doc. 20).  In the remand motion, the plaintiffs do not address the following defendants:  Great Southern, Broussard, G&L, or Reliable, but they argue that Louisiana Swabbing, Superior, and Cajun Tubing Testers (hereinafter sometimes referred to as "the Service

Company Defendants") are nondiverse parties who were not improperly joined, depriving the court of jurisdiction and requiring that the action be remanded to state court.

## ANALYSIS

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[1]  Accordingly, federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[2] and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states.[3]  For that reason, a suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court jurisdiction establishes otherwise.[4]  Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns."[5]  The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand and against

---

[1]     See, e.g., *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010); *Howery v. Allstate Ins., Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[2]     28 U.S.C. § 1331.

[3]     28 U.S.C. § 1332.

[4]     *Howery v. Allstate*, 243 F.3d at 916.

[5]     *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).

-4-

federal-court jurisdiction.[6]  The party invoking subject-matter jurisdiction in federal court has the burden of establishing the court's jurisdiction by a preponderance of the evidence.[7]  When an action is removed from state court, as this suit was, the removing party bears the burden of proving that federal jurisdiction exists.[8]  Accordingly, the removing parties – Hilcorp, ConocoPhillips, and Vintage – have the burden of establishing that this court has jurisdiction over this matter.

To remove a case based on diversity jurisdiction, a defendant must demonstrate "that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied."[9]  Thus, the removing defendant must establish that the amount in controversy exceeds $75,000 and the parties are diverse in citizenship.[10]

## A.   DOES THE AMOUNT IN CONTROVERSY EXCEED THE STATUTORY THRESHOLD?

---

[6]     *Carpenter v. Wichita Falls*, 44 F.3d at 366; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

[7]     *Howery v. Allstate*, 243 F.3d at 919; *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[8]     *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

[9]     *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (*en banc)*.

[10]     28 U.S.C. § 1332.

The amount in controversy is the sum claimed by the plaintiff in his complaint if the claim was apparently made in good faith.[11]  When the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.[12]  This burden can be satisfied either by demonstrating that the amount in controversy is facially apparent from the plaintiff's pleadings or by setting forth the facts in controversy, with summary-judgment-type evidence, that support a finding of the requisite amount.[13]  Thus, the district court must first examine the complaint to determine whether it is facially apparent that the plaintiffs' claims exceed the jurisdictional threshold; if it is not facially apparent, the court may then rely on summary-judgment-type evidence to ascertain the amount in controversy.[14]  Any doubts as to the propriety of removal should be construed strictly in favor of remand.[15]

---

[11]     *St. Paul Reinsurance v. Greenberg*, 134 F.3d at 1253; *De Aguilar v. Boeing*, 47 F.3d at 1408; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Russell*, 972 F.2d 628, 630 (5ᵗʰ Cir. 1992).

[12]     *Simon v. Wal-Mart Stores*, 193 F.3d 848, 850 (5ᵗʰ Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5ᵗʰ Cir. 1995).

[13]     *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5ᵗʰ Cir. 1999); *Allen v. R & H*, 63 F.3d at 1335.

[14]     *Luckett v. Delta Airlines*, 171 F.3d at 298; *Allen v. R & H*, 63 F.3d at 1335.

[15]     *Manguno v. Prudential*, 276 F.3d at 723.

In Louisiana, plaintiffs are not permitted to plead a specific dollar amount of damages.[16]   Therefore, the original petition filed in this lawsuit does not request recovery of a specific amount.   There are certain situations in which the nature of the alleged injury or the type of damages claimed will support a conclusion that the amount-in-controversy threshold has been crossed.[17]   This is such a case.   In this lawsuit, the plaintiffs seek to recover for alleged damages to certain immovable property, including compensatory damages in an amount sufficient to conduct an environmental assessment and restore the property to an unpolluted state; damages for loss of use, lost profits and lost income; damages for land loss and subsidence; punitive and exemplary damages; damages for stigma resulting in diminution in property value; and damages for unjust enrichment.   The undersigned therefore finds that it is facially apparent from the plaintiffs' petition that the amount in controversy exceeds the $75,000 statutory threshold for jurisdiction under 28 U.S.C. § 1332.

---

[16]      Louisiana Code of Civil Procedure Article 893(A)(1).  See, also, *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 388 (5th Cir. 2009).

[17]      See, e.g., *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed. App'x 62, 67 (5th Cir. 2010) ("We conclude that it is facially apparent that each plaintiff's wrongful death claim satisfies the amount in controversy requirement."); *Davis v. Grider*, No. 99-30900, 215 F.3d 1350, at *2 (5th Cir. May 5, 2000); *Stockstill v. Wal-Mart Stores, Inc.*, No. 10-95-FJP-SCR, 2010 WL 6494058, at *2 (M.D. La. Dec. 20, 2010) ("A review of the types of injuries alleged in the petition at the time of removal clearly establish that the jurisdictional amount has been met.")

**B.**   <u>ARE THE PARTIES DIVERSE IN CITIZENSHIP</u>?

The removing defendants contend that the plaintiffs are diverse in citizenship from defendants ConocoPhillips, Hilcorp, and Vintage, and that the citizenship of the remaining defendants should be disregarded because they were improperly joined. "The diversity statute requires 'complete diversity' of citizenship:  a district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as one of the defendants."[18]  However, the improper joinder doctrine is a narrow exception to the rule of complete diversity.[19]

To establish improper joinder, the removing party bears the burden of showing either that there was actual fraud in the pleading of jurisdictional facts or that the plaintiff is unable to "establish a cause of action against the non-diverse party in state court."[20]   In this case, there are no allegations of actual fraud; accordingly, the removing defendants must prove that the plaintiffs have no possibility of recovering against at least one nondiverse defendant in order to defeat the plaintiffs' motion for remand.

---

[18]     *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992), citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Mas v. Perry*, 489 F.2d 1396, 1398-99 (5th Cir. 1974), *cert. denied*, 419 U.S. 842 (1975).

[19]     *McDonal v. Abbott Labs*., 408 F.3d 177, 183 (5th Cir. 2005).

[20]     *Guillory v. PPG Indus., Inc*., 434 F.3d 303, 308 (5th Cir. 2005), quoting *Smallwood v. Illinois Central*, 385 F.3d at 573.

The basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by inference.[21]  Therefore, when jurisdiction depends on citizenship, citizenship must be distinctly and affirmatively alleged.[22]  Furthermore, "the burden of establishing jurisdiction rests upon the party seeking to invoke it and cannot be placed upon the adversary who challenges it."[23]  For those reasons, "[t]he burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof."[24]  Once a motion to remand is filed, the burden is on the removing party to *prove* that federal jurisdiction exists.[25] If a plaintiff moves for remand, and if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[26]  Removal statutes are to be construed "strictly against removal and for remand."[27]  To further that rule, "[a]ny

---

[21]   *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983).

[22]   *Getty Oil, Div. Of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988).

[23]   *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961).

[24]   *Ray v. Bird and Son and Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975).

[25]   *De Aguilar v. Boeing*, 47 F.3d at 1408.

[26]   28 U.S.C. § 1447(c).

[27]   *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996).  See, also, *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-281 (5th Cir. 2007).

ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."[28]

Here, it was the removing defendants that invoked this court's jurisdiction by removing the case from state to federal court.  Accordingly, the removing defendants had the burden of pleading diversity of citizenship distinctly and affirmatively in their removal notice; they had the burden of proving the citizenship of the parties in response to the plaintiff's remand motion; and they have the burden of proving that at least one defendant was improperly joined.

In their removal notice, the removing defendants set forth information regarding the citizenship of the plaintiffs, showing that they are Louisiana citizens, and three of the defendants – ConocoPhillips, Hilcorp, and Vintage – showing that they are not Louisiana citizens.  (Rec. Doc. 1 at 3).  The removing defendants state that the seven other defendants are Louisiana citizens, but they do not prove this to be the case.  Therefore, the undersigned finds that the removing defendants failed to satisfy their burden of proving the citizenship of each party to the lawsuit.

Since the primary issue presented is improper joinder, however, the undersigned will, for purposes of the instant remand motion, assume that Great Southern, Louisiana Swabbing, Cajun Tubing, G&L, Reliable, Superior, and

---

[28]     *Manguno v. Prudential*, 276 F.3d at 723.

-10-

Broussard are all Louisiana citizens.  Additionally, since the plaintiffs addressed only Cajun Tubing, Louisiana Swabbing, and Superior in support of its motion to remand, the undersigned will analyze only whether at least one of those three entities (hereinafter sometimes referred to as "the Service Company Defendants") was improperly joined.

## C.   WERE THE SERVICE COMPANY DEFENDANTS IMPROPERLY JOINED?

When evaluating whether diversity jurisdiction exists, a court must disregard the nondiverse citizenship of an improperly joined defendant.  To establish the improper joinder of a nondiverse defendant, the removing defendants must demonstrate either:  (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court.[29]  The removing defendants have a heavy burden of proving improper joinder.[30]  The court must evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.[31]  In determining whether a reasonable basis exists upon which a plaintiff may recover, the court may either

---

[29]     *Gasch v. Hartford*, 491 F.3d at 281.

[30]     *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

[31]     *Green v. Amerada Hess*, 707 F.2d at 205; *Guillory v. PPG*, 434 F.3d at 308.

-11-

conduct a Rule 12(b)(6)-type analysis or, if the plaintiff has stated a claim but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may pierce the pleadings and conduct a summary inquiry.[32]  If the court then finds that there is no possibility of recovery against the nondiverse party, the nondiverse party has been improperly joined, and its citizenship must be disregarded for jurisdictional purposes.  The test to be applied in evaluating improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[33]  Stated yet another way,"there must be a reasonable possibility of recovery, not merely a theoretical one."[34]

Having carefully reviewed the plaintiffs' petition, the undersigned finds that it is unnecessary to conduct a summary inquiry since the allegations set forth in the plaintiffs' petition, viewed in light of the applicable test, reveal a reasonable possibility of recovery by the plaintiffs against the Service Company Defendants.

---

[32]    *Anderson v. Georgia Gulf*, 342 Fed. App'x at 915-916, citing *Smallwood v. Illinois Central*, 385 F.3d at 573.

[33]    *Smallwood v. Illinois Central*, 385 F.3d at 577.

[34]    *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (internal quotations, citations, and emphasis omitted).

The removing defendants argued, in their removal notice, that the plaintiffs cannot possibly recover against the Service Company Defendants because the actual targets of the plaintiffs' petition are the companies that had interests in mineral leases affecting the subject property or those with ownership or operating interests in the wells located on the subject property.  They argue that, because the Service Company Defendants had no such interests, those defendants cannot be held liable in this lawsuit.

In support of their remand motion, the plaintiffs explained that they are seeking to recover not only against mineral lessees and operators but also against the Service Company Defendants that performed operations on the subject property.   In particular, they argue that the Service Company Defendants – Cajun Tubing, Louisiana Swabbing, and Superior – "engaged in various well service and/or maintenance activities on the plaintiffs' property."  (Rec. Doc. 20-1 at 8).  The plaintiffs further argue that "the well service companies caused damage independent of and in addition to the damage caused by the Removing Defendants."  (Rec. Doc. 20-1 at 16).  The plaintiffs contend that this is apparent from a review of the petition, and the undersigned agrees.

In this case, most of the allegations set forth in the plaintiffs' petition are directed to the defendants in general rather than to any individual defendant in

particular.  In the introductory paragraph, for example, the plaintiffs state that they are seeking to recover "for damages caused by defendants' oil and gas exploration and production and related activities that substantially harmed. . . plaintiffs' land. . . ."  (Rec. Doc. 1-1 at 2).  In Paragraph 2, the plaintiffs allege that the subject property "has been contaminated or otherwise damaged by defendants' oil and gas exploration and production activities."  (Rec. Doc. 1-2 at 2).  In Paragraph 5, the plaintiffs allege that "Defendants either caused this contamination or are otherwise legally responsible for this contamination.  Defendants' activities include the operation or construction of various oil and gas facilities, including but no limited to, pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities. . . .  [D]efendants are liable for damage resulting from the operation of the wells. . . as well as the operation of other equipment and facilities related thereto."  (Rec. Doc. 1-1 at 4).

In Paragraph 6, however, the plaintiffs clarified the fact that they are seeking recovery not only from mineral lessees and well operators but also from oilfield contractors who performed various types of activities on the property to facilitate the exploration for and/or production of oil or gas from the property.  The plaintiffs allege that the "Defendants conducted, directed, controlled or participated in various oil and gas exploration and production activities on the plaintiffs' Property as

-14-

operators. . . **and/or oil field contractors or workover contractors**." [Emphasis added.] (Rec. Doc. 1-1 at 4-5).

More specific allegations are set forth subsequently. In Paragraph 7, for example, the plaintiffs allege that they were damaged by "the improper disposal of oilfield wastes in unlined earthen pits, which were constructed by the defendants on or near the Property during the course of oil and gas exploration and production activities." (Rec. Doc. 1-1 at 5). The plaintiffs also allege, in the same paragraph, that there were "leaks, spills, and other surface and subsurface discharges of. . . substances from wells, pipelines, tank batteries, gas plants and other equipment or facilities [that] have . . . polluted the surface and subsurface of plaintiffs' Property." (Rec. Doc. 1-1 at 5).

The plaintiffs link this alleged conduct and damage with the defendants activities in Paragraph 15, alleging that the "Defendants' conduct constitutes negligence." (Rec. Doc. 1-1 at 8). In Paragraph 28, the plaintiffs reiterate this allegation, alleging that the defendants "negligently. . . used the Property during mineral operations." (Rec. Doc. 1-1 at 13).

The undersigned finds that these allegations are sufficient to state a cause of action in negligence against the Service Company Defendants, raising a reasonable possibility of recovery by the plaintiffs against those parties.

-15-

The undersigned further finds that this case is distinguishable from those relied upon by the removing defendants in opposition to the remand motion.

In *Kling Realty Co., Inc. v. Texaco*, No. 06-1492, 2007 WL 81665 (W.D. La. Jan. 8, 2007), the plaintiffs sued Estis Well Service and others.  Estis was not diverse, but the plaintiffs claimed that there was a reasonable possibility of recovery against Estis because it had allegedly "conducted, directed, controlled, or participated in various oil and gas exploration and production activities as operators, working interest owners, and/or joint venturers."  Estis argued that this statement was unsupported and erroneous, contending that the plaintiffs' general allegations directed at all named defendants failed to show that Estis was actually connected as an owner or operator.  In response to the motion to remand, the defendants offered proof in the form of DNR records and the affidavit of a long-time Chevron employee who averred that Estis did not operate any of the wells on the property at issue, and was not a working interest owner or joint venturer with regard to the wells.  This evidence was not contradicted by the plaintiffs.  The court concluded that there was no reasonable basis to predict that the plaintiffs could recover against Estis, and the motion to remand was denied.

The *Kling* decision was based on the resolution of *Hawthorne Land Co. v. Occidental Chemical Corp.*, 431 F.3d 221 (5th Cir. 2005).  There, property was

-16-

damaged by leaks from tanks.  Two of the defendants were alleged in the complaint to be excavators rather than welders, and the court found that "there is no documentary connection between [the two defendants] and the failed welds.  The petition does not allege any connection, and the defendants convincingly show that the leak reports relied upon by plaintiffs in the motion to remand do not reveal a connection, either.  In addition, the defendants offered the affidavit of [the]. . . plant manager. . ., which stated that none of the welds by [these two defendants] failed; this affidavit may be 'selfserving [sic],' as plaintiffs contend, but it is evidence which plaintiffs have not contradicted on even a superficial level."  The court held that there was no reasonable basis for the district court to predict that the plaintiffs could recover against these two defendants, and the motion to remand was denied.

In both *Kling* and *Hawthorne*, the removing defendants offered evidence establishing that there was no factual basis for the plaintiffs' claims, and the court went beyond the allegations of the petitions and conducted a summary inquiry into the facts supporting those allegations.  In this case, however, the removing defendants presented no evidence whatsoever proving that the Service Company Defendants did not, at any relevant time, perform any work on the subject property.

The removing defendants also cite to *Frank C. Minvielle, L.L.C. v. IMC et al.*, No. 6:03-cv-01908 (W.D. La. Feb. 2, 2004).   There, the plaintiffs sued four

-17-

defendants, including Estis Well Service.  The plaintiff established that Estis plugged and abandoned a well, but there was no allegation that Estis negligently performed that service.  The court concluded that the allegations Estis were insufficient to create a reasonable possibility of recovery.  Put another way, the plaintiffs in *Minvielle* did not allege that the nondiverse defendant was negligent. The motion to remand was denied, and the claims against Estis were dismissed.

In this case, the undersigned finds that the use of a summary-judgment-style procedure is unnecessary.  Here, as noted above, the plaintiffs' petition is clear that negligence claims are expressly asserted against the Service Company Defendants, and the removing defendants had an adequate opportunity to do what the defendants in *Kling* and *Hawthorne* did and present evidence establishing the extent of the Service Company Defendants' activity on the subject property.  But the removing defendants presented no evidence to prove that the Service Company Defendants did not conduct any operations whatsoever on the subject property.  Absent such a showing by the removing defendants, the undersigned restricted his analysis to the plaintiffs' allegations and finds that, from the face of the petition, the plaintiffs have alleged facts sufficient to raise a reasonable possibility that the plaintiffs might recover from the plaintiffs.  Whether the plaintiffs will ultimately prevail on the

negligence claims they asserted in their petition is not an issue currently before the court.

Accordingly, the undersigned finds that this court lacks subject-matter jurisdiction over this action and grants the plaintiffs' motion to remand (Rec. Doc. 20). However, this ruling will be stayed during the time period for appeal to the district court. Absent appeal, the case shall be remanded, otherwise, the ruling will remain stayed during the pendency of any appeal.

## D.    OTHER PENDING MOTION

Defendant Superior Energy Services LLC filed a motion for preliminary hearing pursuant to La. R.S. 30:29(B)(6).  (Rec. Doc. 27).  As explained above, however, the undersigned finds that this court has no jurisdiction over this action. Accordingly, the court must decline to rule on this motion.

## CONCLUSION

The defendants removed this action from state court, contending that the amount in controversy exceeds the jurisdictional threshold, that the plaintiffs are diverse in citizenship from the removing defendants, and that the citizenship of the remaining nondiverse defendants must be disregarded because they were improperly

-19-

joined as defendants in the suit.  The plaintiffs filed the instant motion to remand, arguing that nondiverse defendants Cajun Tubing, Louisiana Swabbing, and Superior were not improperly joined because there is a reasonable possibility that the plaintiffs might recover against them.  For the reasons explained above, the removing defendants did not satisfy their burden of proving that these parties were improperly joined and did not prove that this court has jurisdiction.  Accordingly, the plaintiffs' motion for remand (Rec. Doc. 20) is GRANTED.  Because it lacks jurisdiction, the Court declines to rule on the other pending motion (Rec. Doc. 27).


Signed at Lafayette, Louisiana, this 27th day of February 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE