RECEIVED

MAY 1 4 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| KARL DESHOTELS, ET AL. | CIVIL ACTION NO. 12-3133 |
| VERSUS | JUDGE DOHERTY |
| CONOCOPHILLIPS CO., ET AL. | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Pending before this Court is a Ruling issued by the magistrate judge [Doc. 38], in which the magistrate judge grants the Motion to Remand [Doc. 20] filed by plaintiffs Karl Deshotels and Opelousas-St. Landry Realty Co., on grounds this Court lacks subject matter jurisdiction over this matter. The magistrate judge remanded the instant matter to the 13th Judicial District Court for the Parish of Evangeline, Louisiana, but delayed the remand pending an appeal to be filed by the removing parties.[1]

Defendant Hilcorp Energy Co. ("Hilcorp") has appealed the magistrate judge's ruling, plaintiffs have filed an opposition brief, and Hilcorp has filed a Motion for Leave to File a Reply [Doc. 43], which is herein GRANTED. After this Court's review of the issue presented, this Court concludes the ruling of the magistrate judge is correct and should be affirmed. In so finding, this Court concludes defendants Louisiana Swabbing Service, Inc., Superior Energy Services, LLC, and Cajun Tubing Testers, Inc. (the "Service Company Defendants") – all Louisiana companies that will destroy diversity should they be permitted to remain in the lawsuit – were not improperly joined. Because the presence of the Service Company Defendants in the instant lawsuit defeats complete

---

[1] In so holding, the magistrate judge declined to rule on the Motion for Preliminary Hearing [Doc. 27] filed by defendant Superior Energy Services, LLC.

diversity, and no other basis for jurisdiction is found,[2] this Court lacks subject matter jurisdiction over the instant case, and the Motion to Remand is, therefore, GRANTED. The Clerk of Court shall immediately remand the instant lawsuit to the 13th Judicial District Court for the Parish of Evangeline, Louisiana.[3]

I.   **Factual Background and Procedural History**

The factual and procedural background are set forth in the magistrate judge's Memorandum Ruling and are hereby incorporated by reference *in toto*.

II.  **Law and Analysis**

   A.   **Standard of Review on Appeal**

With some exceptions inapplicable for purposes of this motion, a magistrate judge may hear and determine any pre-trial matter pending before a district court. 28 U.S.C. §636(b)(1). Federal law affords the magistrate judge broad discretion in the resolution of non-dispositive matters. *See* Fed. R. Civ. P.72(a). With regard to a non-dispositive matter, a district court will reverse a magistrate judge's ruling only if the party challenging the decision demonstrates that the magistrate's determination was clearly erroneous or contrary to law. *Id*; *Castillo v. Frank*, 70 F.3d, 382, 385-86 (5th Cir. 1995).

Although the law is unsettled in this circuit on this point, district courts in this circuit have generally adhered to the view that motions to remand are non-dispositive pretrial matters and have applied the clearly erroneous standard of review pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R.

---

[2] The removing defendants removed the case to this Court solely on the basis of diversity jurisdiction.

[3] As this Court lacks subject matter jurisdiction over the instant case, this Court declines to rule on the Motion for Preliminary Hearing [Doc. 27] filed by defendant Superior Energy Services, LLC.

Civ. P. 72(a). *See, e.g., Lonkowski v. R.J. Reynolds Tobacco Co.*, No. Civ. A. 96-1192, 1996 WL 888182, at *2-4 (W.D. La. Dec. 10, 1996); *Vaquillas Ranch Co., Ltd. v. Texaco Exploration and Production, Inc.*, 844 F. Supp. 1156, 1162 (S.D. Tex. 1994); *Bethay v. Ford Motor Co.*, No. Civ. A. 99-0367, 1999 WL 496488, at *1 (E.D. La. July 13, 1999). The Fifth Circuit has not indicated such motions should be treated otherwise. As such, this Court will apply the "clearly erroneous" standard of review to the magistrate judge's Ruling.

B. **Standard for Removal**

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *citing Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). This Court must presume a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Howery*, 243 F.3d at 916. Thus, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Property and Cas. Insurance. Co.*, 276 F.3d 720, 723 (5th Cir.2002), *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995). *See also Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir.1991) ("The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction."), *quoting Getty Oil Corp . v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1259 (5th Cir.1988). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno,* 276 F.3d at 723, *citing Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.2000).

C. **Legal Analysis**

The issue before the Court is whether the Service Company Defendants were improperly

3

joined. If they were, the Service Company Defendants should be dismissed, and the case should be permitted to remain in this court. If the Service Company Defendants were properly joined, their presence in the lawsuit destroys diversity and, there being no other basis for jurisdiction, this Court lacks subject matter jurisdiction, and remand is warranted.[4]

"Fraudulent [or improper] joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003). Hilcorp does not dispute that the Service Company Defendants are Louisiana citizens. Therefore, this Court's inquiry turns on the second test. In order to show joinder was improper under this test, Hilcorp must demonstrate "there is no possibility of recovery by the plaintiff against [the] in-state defendant[s]." *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir.2004). This Court notes the burden of persuasion on those claiming fraudulent joinder is a heavy one. *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462, *citing Travis v. Irby,* 326 F.3d 644, 648 (5th Cir. 2003).

The Fifth Circuit has defined the fraudulent joinder standard in various ways. As explained by the court in *Ross*:

---

[4] Only the joinder of Louisiana Swabbing, Superior, and Cajun Tubing Testers – all citizens of Louisiana for diversity purposes -- is at issue. The plaintiffs are all alleged to be Louisiana citizens. In their removal notice, the removing defendants argued defendant Bennett Broussard, a Louisiana citizen, was improperly joined because he is deceased; Superior Energy, a Louisiana limited liability company, was improperly joined because it did not conduct oil and gas exploration activities with regard to any well at issue in this litigation; and the Service Company Defendants were improperly joined because they did not own interests in the relevant mineral leases, had no ownership or operating interest in the relevant wells or leases, and the petition lacks sufficient facts to hold them liable.

In their motion to remand, the plaintiffs address only the joinder of Louisiana Swabbing, Superior, and Cajun Tubing Testers (the Service Company Defendants). Because the Service Company Defendants are non-diverse, if there is any possibility of recovery against them, the case must be remanded (regardless of the existence of any joinder issues with respect to other defendants), as complete diversity would be lacking, and, there being no other basis for jurisdiction, this Court would lack subject matter jurisdiction in this case.

4

> Recent opinions, however, have clarified [the] standard. "Any argument that a gap exists between the 'no possibility' and 'reasonable basis' of recovery language was recently narrowed, if not closed." The court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. <u>This means that there must be a reasonable possibility of recovery, not merely a theoretical one</u>.

344 F.3d at 462 (emphasis added) (internal citations omitted).

The Fifth Circuit has stated in conducting an inquiry as to whether a plaintiff has a reasonable basis of recovery under state law, the court may utilize one of two procedures, as follows:

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Smallwood*, 385 F.3d at 574.

Thus, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the [summary] inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* Accepting all well-pleaded facts as true and in favor of

5

plaintiff, if the defendant can show there is *no reasonable basis* for the district court to predict the plaintiff might be able to recover against the in-state defendant, then joinder is improper. *Travis,* 326 F.3d at 648 (emphasis added).

At issue in the instant case is the joinder of Louisiana Swabbing, Superior, and Cajun Tubing Testers (the "Service Company Defendants"). In the instant case, the magistrate judge concluded it was unnecessary to proceed to a summary inquiry, because on the face of the plaintiffs' petition, the allegations set forth in the plaintiffs' petition, viewed in light of the applicable test, reveal a reasonable possibility of recovery by the plaintiffs against the Service Company Defendants. This Court agrees.

The gist of Hilcorp's argument is that the plaintiffs have not properly pled their claims against the Service Company Defendants, in that they have not alleged specific facts against the Service Company Defendants showing what specific activities were conducted by each Service Company Defendant to support a claim of negligent contamination of the plaintiffs' property. Rather, Hilcorp argues the plaintiffs have "lumped the differently situated Service Company Defendants in with the owner/operator defendants," without specifying specific allegations of negligence against each separate defendant. Thus, Hilcorp argues the plaintiffs' petition fails to state a claim against the Service Company Defendants, and there is no reasonable basis for predicting the plaintiffs could establish liability against the Service Company Defendants.

The magistrate judge addressed the foregoing alleged deficiencies in his Ruling, noting as follows:

> In support of their remand motion, the plaintiffs explained that they are seeking to recover not only against mineral lessees and operators but also against the Service Company Defendants that performed operations on the subject property. In

particular, they argue that the Service Company Defendants – Cajun Tubing, Louisiana Swabbing, and Superior – "engaged in various well service and/or maintenance activities on the plaintiffs' property." (Rec. Doc. 20-1 at 8). The plaintiffs further argue that "the well service companies caused damage independent of and in addition to the damage caused by the Removing Defendants." (Rec. Doc. 20-1 at 16). The plaintiffs contend that this is apparent from a review of the petition, and the undersigned agrees.

In this case, most of the allegations set forth in the plaintiffs' petition are directed to the defendants in general rather than to any individual defendant in particular. In the introductory paragraph, for example, the plaintiffs state that they are seeking to recover "for damages caused by defendants' oil and gas exploration and production and related activities that substantially harmed. . . plaintiffs' land. . . ." (Rec. Doc. 1-1 at 2). In Paragraph 2, the plaintiffs allege that the subject property "has been contaminated or otherwise damaged by defendants' oil and gas exploration and production activities." (Rec. Doc. 1-2 at 2). In Paragraph 5, the plaintiffs allege that "Defendants either caused this contamination or are otherwise legally responsible for this contamination. Defendants' activities include the operation or construction of various oil and gas facilities, including but no limited to, pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities. . . . [D]efendants are liable for damage resulting from the operation of the wells. . . as well as the operation of other equipment and facilities related thereto." (Rec. Doc. 1-1 at 4).

In Paragraph 6, however, the plaintiffs clarified the fact that they are seeking recovery not only from mineral lessees and well operators but also from oilfield contractors who performed various types of activities on the property to facilitate the exploration for and/or production of oil or gas from the property. The plaintiffs allege that the "Defendants conducted, directed, controlled or participated in various oil and gas exploration and production activities on the plaintiffs' Property as operators. . . and/or oil field contractors or workover contractors." [Emphasis added.] (Rec. Doc. 1-1 at 4-5).

More specific allegations are set forth subsequently. In Paragraph 7, for example, the plaintiffs allege that they were damaged by "the improper disposal of oilfield wastes in unlined earthen pits, which were constructed by the defendants on or near the Property during the course of oil and gas exploration and production activities." (Rec. Doc. 1-1 at 5). The plaintiffs also allege, in the same paragraph, that there were "leaks, spills, and other surface and subsurface discharges of. . . substances from wells, pipelines, tank batteries, gas plants and other equipment or facilities [that] have . . . polluted the surface and subsurface of plaintiffs' Property." (Rec. Doc. 1-1 at 5).

The plaintiffs link this alleged conduct and damage with the defendants activities in Paragraph 15, alleging that the "Defendants' conduct constitutes negligence." (Rec. Doc. 1-1 at 8). In Paragraph 28, the plaintiffs reiterate this allegation, alleging that the defendants "negligently. . . used the Property during mineral operations." (Rec. Doc. 1-1 at 13).

The undersigned finds that these allegations are sufficient to state a cause of action in negligence against the Service Company Defendants, raising a reasonable possibility of recovery by the plaintiffs against those parties.

In reaching this conclusion, the magistrate judge distinguished the cases of *Kling Realty Co., Inc. v. Texaco, Inc.*, 2007 WL 81665 (W.D. La. Jan. 8, 2007) (J. Melancon) and *Hawthorne Land Co. v. Occidental Chemical Corp.*, 431 F.3d 221 (5th Cir. 2005).[5] In *Kling* and *Hawthorne*, the courts concluded the allegations in the plaintiffs' complaints did not sufficiently state a claim against the service company defendants where the allegations against these entities were generally lumped together with allegations against the owner/operators. However, as the magistrate judge noted in his Ruling, in both *Kling* and *Hawthorne*, in response to the plaintiffs' motions to remand, the removing defendants *presented evidence* regarding the activities conducted by the Service Company Defendants on the subject property, which conclusively established there could be no liability against these in-state defendants. Here, however, the removing defendants have "presented no evidence to prove that the [Service Company Defendants] did not conduct any operations whatsoever on the subject property."[6] The magistrate judge went on to conclude: "Absent such a showing by the removing defendants, the undersigned restricted his analysis to the plaintiffs' allegations and finds that, from the face of the petition, the plaintiffs have alleged facts sufficient to raise a reasonable

---

[5] A third case referenced by the parties, *Frank C. Minvielle v. IMC Global Operations, Inc., et al.*, is also distinguishable because in that case, there is no allegation of negligence against the in-state defendant anywhere in the plaintiff's petition. *See* Ruling on Motion to Remand, Doc. 55 in Civil Action No. 03-1908 (W.D. La (Feb. 2, 2004) (M.J. Methvin).

[6] *See* Ruling, Doc. 38., at p. 18.

8

possibility that the plaintiffs might recover from the plaintiffs. Whether the plaintiffs will ultimately prevail on the negligence claims they asserted in their petition is not an issue currently before the court."[7]

This Court agrees. Employing a 12(b)(6)-type analysis[8] to determine whether it is possible that the plaintiffs could recover against the Service Company Defendants, this Court notes it reviews a motion to dismiss under Rule 12(b)(6), "*accepting all* well-pleaded *facts as true and viewing those facts in the light most favorable to the plaintiff.*" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted)(emphasis added). However, "[f]actual allegations must be enough to raise a right to relief *above the speculative level.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)(emphasis added). "To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face.*' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955)(emphasis added). Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are *"well pleaded"* rather than to resolve the disputes or possible arguments suggested by, or, surrounding those facts. The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "**The**

---

[7] *Id.*

[8] The parties are referred to the Ruling of the magistrate judge for a complete description of the standards employed herein. The parties are cautioned as to the separate and distinct burdens at play in connection with remand, fraudulent joinder, and other procedural mechanics that might come into play. This Court need not parse out those standards at this juncture, because the result would be the same under whichever standard is employed.

**plausibility standard is not akin to a 'probability requirement,'** but **it asks for *more than a sheer possibility*** that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)(emphasis added). Stated differently, the jurisprudence instructs that if a plaintiff fails to allege, in his/her pleadings, facts sufficient to "*nudge [his or her] claims across the line from conceivable to plausible*, [his or her] complaint must be dismissed." *Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)(emphasis added). Again, the jurisprudence instructs that determining whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In the instant case, in Paragraph 6 of their Complaint, the plaintiffs allege they are seeking recovery not only from mineral lessees and well operators but also from oilfield contractors – such as the Service Company Defendants – who performed various types of activities on the property to facilitate the exploration for and/or production of oil or gas from the property. The plaintiffs allege the "Defendants conducted, directed, controlled or participated in various oil and gas exploration and production activities on the plaintiffs' Property as operators. . . and/or oil field contractors or workover contractors." (Rec. Doc. 1-1 at ¶¶4-5). In Paragraph 7, the plaintiffs allege they were damaged by "the improper disposal of oilfield wastes in unlined earthen pits, which were constructed by the defendants on or near the Property during the course of oil and gas exploration and production activities." (Rec. Doc. 1-1 at ¶5). The plaintiffs also allege, in the same paragraph, there were "leaks, spills, and other surface and subsurface discharges of. . . substances from wells, pipelines, tank batteries, gas plants and other equipment or facilities [that] have . . . polluted the surface and subsurface of plaintiffs' Property." (Rec. Doc. 1-1 at ¶5).

As the magistrate judge pointed out, the plaintiffs link the aforementioned alleged conduct and damage with "the defendants'" activities in Paragraph 15, alleging the "Defendants' conduct constitutes negligence." (Rec. Doc. 1-1 at ¶8). In Paragraph 28, the plaintiffs reiterate this allegation, alleging that "the defendants" "negligently. . . used the Property during mineral operations." (Rec. Doc. 1-1 at ¶13). Earlier allegations alleged the Service Company Defendants were engaged in the oil and gas conduct performed on the property at issue. The mere fact plaintiffs did not specifically parse out the alleged conduct as between and among the defendants is not fatal to the procedural inquiry at hand, as defendant's argument might infer. The standard espoused in *Iqbal* and *Twombly* does not require such particularized parsing.

This Court, however, expresses no comment whatsoever as to whether the foregoing allegations are sufficient to establish liability – which, indeed, is not the proper scope of the procedural inquiry before the Court at this juncture – nor does the Court (or *Iqbal* or *Twombly*) require more detailed factual allegations that will, no doubt, be fleshed out in discovery. After a review of the record, this Court concludes, as did the magistrate judge, that the allegations contained in the plaintiffs' petition are sufficient to <u>state a cause of action in negligence</u> against the Service Company Defendants, by raising a sufficient possibility of recovery by the plaintiffs against those parties as required by the applicable jurisprudence. Considering the foregoing, this Court concludes the finding of the magistrate judge that this court lacks subject-matter jurisdiction over this action should be AFFIRMED. Therefore, the plaintiffs' Motion to Remand (Rec. Doc. 20) is GRANTED, this Court concluding it lacks subject matter jurisdiction over the instant action, as compete diversity does not exist, given the presence of the in-state defendants, whom this Court concludes were not improperly joined under the applicable standard as argued by Hilcorp, and there being no other basis

11

for jurisdiction found. Therefore, the Clerk of Court shall immediately REMAND this case to the 13th Judicial District Court for the Parish of Evangeline, Louisiana for lack of subject matter jurisdiction.

As this Court lacks subject matter jurisdiction over the instant case, this Court declines to rule on Superior's Motion for Preliminary Hearing [Doc. 27].

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this __14__ day of May, 2013.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE